**William H. TABOR, Jr., Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 781 S 190.**

Supreme Court of Indiana.

April 2, 1984.

Susan K. Carpenter, Public Defender, M.E. Tuke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant William. H. Tabor, Jr., was convicted of Kidnapping, Ind.Code § 35–42–3–2 (Burns Repl.1979), and Robbery, Ind.Code § 35–42–5–1 (Burns Repl. 1979), at the conclusion of a jury trial in Henry Superior Court. The trial court sentenced the defendant to thirty (30) years for the kidnapping and twenty (20) years for the robbery, the sentences to be served consecutively. Tabor now appeals.

The appellant presents ten issues for our consideration as follows:

1. error in the admission of the defendant's tape recorded statement;

2. error in the identification testimony of the defendant;

3. admission of exhibits taken from the home of a third person;

4. improper reference to the defendant's prior criminal activities;

5. improper testimony by the trial court's expert witnesses;

6. sufficiency of the evidence;

7. denial of the motion for change of venue from the county;

8. juror misconduct;

9. judicial misconduct; and

10. error in sentencing the defendant.

The evidence most favorable to the State reveals that on the morning of May 19, 1980, Defendant entered the Spiceland Branch of the Citizen's State Bank in Henry County, Indiana, and requested information about loans from the bank teller,

Sandy Simerly. Simerly referred Defendant to the branch manager, Ronald Zimmerman. Zimmerman and Defendant then discussed loans for fifteen to twenty minutes after which Defendant left the bank. Defendant returned a short time later and asked the teller and manager if he had left his glasses at the bank. Defendant then pulled a gun on the branch manager, Zimmerman, and forced him to give him money from the bank. Zimmerman was forced to drive the defendant from the bank, the defendant himself providing directions on what route to take. He eventually let Mr. Zimmerman out of the automobile.

Defendant was arrested on that same afternoon at the home of a friend, Teresa Groce. Teresa Groce provided the police with money Defendant had given her that day. Defendant was advised of his rights when arrested and was again advised of his rights at the police station. Defendant gave the police money from the bank robbery which he had in his billfold and then made a statement concerning the bank robbery. This statement was tape recorded. Defendant then led the police to the residence of another friend, Edith Nichols, gave the police permission to go into the home and then showed the police where the money was located inside the Nichols home. Defendant also took the police out into the country, ostensibly to look for the gun he had used in the robbery. The gun, however, was later recovered from the automobile belonging to Mr. and Mrs. Groce. Also on that same day, the police conducted a lineup with Defendant, and both Zimmerman and Simerly identified Defendant as the perpetrator.

I

Prior to trial, the defendant filed a motion to suppress the tape-recorded statement he gave to the police. This motion was overruled. When the statement was offered into evidence by the State as State's exhibit 31, Defendant made no objection to its admission on grounds that it was not knowingly and willingly given as was alleged in the motion to suppress. His only objection made to the trial court at the time it was admitted was that he asked that the jury also be furnished a transcript of the statement to follow while it was listening to the tape. He felt the jury could better follow the statement in that manner. The trial court denied his request and the jury heard only the playing of the tape.

Defendant now claims the tape recording was not sufficiently clear so as to comply with the foundational requirements of *Lamar v. State*, (1972) 258 Ind. 504, 282 N.E.2d 795. Defendant, however, did not raise this claim nor object on this ground in the trial court. It is well-settled, of course, that error in overruling a motion to suppress is not preserved for appellate review unless there is a proper objection when evidence is later offered at trial. *Andrews v. State*, (1982) Ind., 441 N.E.2d 194; *Minneman v. State*, (1982) Ind., 441 N.E.2d 673. Furthermore, when a party raises argument on appeal predicated upon grounds substantially different from those raised at trial, any allegation of error has been waived. *Davidson v. State*, (1982) Ind., 442 N.E.2d 1076; *Carman v. State*, (1979) 272 Ind. 76, 396 N.E.2d 344. In *Hestand v. State*, (1982) Ind., 440 N.E.2d 1121, this Court stated: "Every recorded word need not be intelligible for we only require that, taken as a whole, the tape be of such clarity that it does not lead to jury speculation as to its content." *Id.* at 1122. Even though Defendant did not preserve the issue of audibility of the tape, there is no showing here that it was not audible and clear enough for the jury to understand it without resorting to speculation. The only issue remaining then is the request of the defendant to furnish a transcript of the tape recording to the jury, along with the recording itself. This, of course, is within the discretion of the trial court and the position of the State is well-taken that this evidence would have been merely cumulative of the recording itself and the exclusion of evidence that is merely cumulative of other evidence already introduced is not error. *Lyons v. State*, (1982)

Ind., 431 N.E.2d 78, 80. Defendant has presented no reversible error on this issue.

## II

Defendant now claims the trial court erred in denying his pretrial motion to suppress identification testimony of him, claiming that the lineup at the police station was impermissibly suggestive and also claiming the State's witnesses were coached. The record shows, however, that when Zimmerman and Simerly testified as to their identification of the defendant, no objection was raised by the defendant. Defendant has accordingly waived this issue. *Andrews, supra; Minneman, supra; Hill v. State*, (1982) Ind., 442 N.E.2d 1049. The only objection Defendant voiced about the lineup was during the questioning of witness Simerly. That objection was by defense counsel: "Then Your Honor, we'll simply interpose our previous objection to the lineup." The record shows there were no previous objections to the lineup or to identification testimony. Furthermore, the statement does not present any grounds for an objection. The State properly points out that evidence concerning identification of Defendant as the robber had already been admitted into evidence without objection prior to this objection by Defendant. Defendant's objection was therefore not timely, even if, assuming, *arguendo*, it had any other merit. *Tinnin v. State*, (1981) Ind., 416 N.E.2d 116; *Carman v. State*, (1979) 272 Ind. 76, 396 N.E.2d 344. Defendant presents no argument regarding the alleged coaching of the identification witnesses so he has also waived this issue. *Guardiola v. State*, (1978) 268 Ind. 404, 375 N.E.2d 1105.

Defendant additionally claims the lineup was conducted in violation of his constitutional right to counsel at that stage. The record shows the lineup was conducted on the same day of the robbery and shortly after Defendant was arrested. Formal charges were not filed against Defendant until May 22, 1980, some three days later. In *Hollonquest v. State*, (1982) Ind., 432 N.E.2d 37, 40, this Court held: "It is well established that an accused is entitled to have counsel present at any lineup which is conducted subsequent to the filing of an information or indictment." Defendant is not entitled to counsel at a lineup that is held before he is formally charged by the filing of an indictment or an information. *Hollonquest, supra; Bray v. State*, (1982) Ind., 443 N.E.2d 310.

## III

Defendant claims the trial court erred in admitting into evidence exhibits recovered by the police from the home of Edith Nichols. Following the giving of his tape recorded statement to the police, the Defendant executed a consent to search form for the Nichols residence and took the police there voluntarily, showing them where the bank money was hidden. Defendant now makes a novel argument concerning his relationship to this property as it concerns his constitutional rights. He first states that since this was not his home but was owned by Edith Nichols, he did not have authority to give them consent to search it and the police had no right to do so without a search warrant. Defendant argues on the other hand, however, that he did have sufficient proprietary interest in the Nichols residence so that he had legitimate expectation of privacy in the residence and again the police were not authorized to search it without a search warrant.

Although we find Defendant's argument ingenious, we are not persuaded by it. Mrs. Nichols testified at trial that prior to the date of the crime, she had known Defendant casually for approximately six weeks. Defendant had spent the night before the crime at her house only because they had been using her car and when it became dark she noticed her car lights were not working. Defendant was not living at her house and never had. He stayed there only because of the emergency with the automobile so that he could take Mrs. Nichols to work the next morning and repair her car while she was at work. She gave him the keys to the car to arrange to have the lights repaired and also on the key

ring were her house keys. Defendant does not deny these facts nor does he add any facts that would indicate a proprietary interest in the Nichols' residence such that he would have a legitimate expectation of privacy in it. *Humes v. State*, (1981) Ind., 426 N.E.2d 379. The defendant has no constitutional right to challenge the search or seizure of another person's property. *Hope v. State*, (1982) Ind., 438 N.E.2d 273. Defendant was not using the Nichols' property either as a temporary residence or in any other manner that would give him an interest that would rise to a legitimate expectation of privacy in the premises. *Rakas v. Illinois*, (1978) 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387; *Jones v. United States*, (1960) 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697.

█ Furthermore, as we already have indicated, Defendant executed a consent to search the Nichols residence which gave the police authority to do so without a search warrant regardless of any proprietary interest Defendant-Appellant had or failed to have in the residence. Accordingly, there is no error presented on this issue.

### IV

Defendant claims there was improper reference made by the State to his prior criminal activities. These references came in through statements made by Defendant himself in his taped statements and in cross-examination of a defense witness. Defendant concedes he made no objection whatever to any of this testimony at the trial and that would, of course, constitute a waiver of the alleged error here. *Richey v. State*, (1981) Ind., 426 N.E.2d 389.

█ Defendant further claims, however, that the references to his criminal activity was fundamental error and asks us to address it in that posture. We have held: "To be categorized as fundamental error and thus to transcend our procedural requirements, the error must be blatant, and the potential for harm must be substantial and appear clearly and prospectively." *Nelson v. State*, (1980) Ind., 409 N.E.2d 637 at 638. *See also Greer v. State*, (1982)

Ind., 436 N.E.2d 293. The State contends the evidence was properly admitted here because Defendant had raised insanity as a defense and "a plea of insanity opens the door for the admission of testimony as to the defendant's entire life." *Lock v. State*, (1980) Ind., 403 N.E.2d 1360, 1367. This Court observed in *Smith v. State*, (1982) Ind., 432 N.E.2d 1363, 1371: "It is well settled in Indiana that when a defendant raises the defense of insanity, the general rule is that there is great latitude in admitting evidence of other conduct of the defendant, limited to the extent that such conduct must be relevant to the issue of insanity." *See also Resnover v. State*, (1982) Ind., 434 N.E.2d 78. It is the State's position that Defendant's extensive prior criminal history, as indicated by his own words in the statement, was relevant to the issue of Defendant's sanity for it tended to demonstrate that the present crime was not the product of a diseased mind but rather was merely another manifestation of his antisocial behavior. Ind.Code § 35-41-3-6(b). Furthermore, Defendant indicated to the trial court he had no objection to his entire statement being presented to the jury and asked only that a transcript of the tape be given to the jury so that they might follow it more carefully. He cannot now be heard to claim fundamental error for that part of his statement, well known to him, that related his past criminal behavior.

█ Defendant's wife testified for the defense. Defendant had questioned her with respect to Defendant's past problems, including his treatment in mental health facilities. On cross-examination, the State elicited from her that his commitment to health facilities was related to past criminal involvement in which he had claimed insanity and had been committed to an institution rather than face a prison sentence. This was a further examination into an area already opened by the defendant and he made no objection to the pursuit of it during cross-examination at the trial. Evidence of unrelated criminal activity which is relevant to a fact in issue is not inadmissible merely because it tends to

show guilt of another crime. *McManus v. State*, (1982) Ind., 433 N.E.2d 775, 778. Thus, no fundamental error is shown and Defendant's failure to object constituted a waiver of any error.

## V

Two court appointed experts testified about the sanity of Defendant. Dr. Yarling and Dr. Caudill stated it was their opinion Defendant was not insane. Defendant now, on appeal, objects to their testimony as to their interpretation of the legal definition of insanity and its application in the present case as erroneous. The record again shows, however, that Defendant offered no objection to the testimony of either doctor at the trial on this or any other ground. He has, therefore, waived this issue and we will not consider it further. *Ballard v. State*, (1974) 262 Ind. 482, 318 N.E.2d 798; *Lock, supra*.

## VI

Defendant next claims the evidence was insufficient to sustain the verdicts of guilty on both counts, claiming the evidence indicated he was insane at the time of the commission of the crimes and further that he was intoxicated to such an extent he could not have formed the specific intent to commit the crimes.

At the time the defendant committed this crime, May 19, 1980, the law placed the burden of establishing the insanity defense on him. Because he had the burden of proof, he is now appealing from a negative finding and the issue becomes not whether or not the finding was sustained by the evidence but whether it was contrary to all the evidence and hence contrary to law. It is only where the evidence is without conflict and leads to but one conclusion and the trier of fact has reached an opposite conclusion that the decision predicated upon such finding will be disturbed as being contrary to law. *Walker v. State*, (1978) 267 Ind. 649, 372 N.E.2d 739; *see also, Ward v. State*, (1982) Ind., 438 N.E.2d 750. It was the opinion of both expert witnesses that Defendant was not insane at the time of the commission of these crimes. Furthermore, witnesses Zimmerman, Simerly, and police officers who had contact with Defendant on the day of the crime, testified that Defendant appeared and acted normal. No question of sufficiency as to this issue is therefore presented. *Mayes v. State*, (1982) Ind., 440 N.E.2d 678.

The same can be said of Defendant's claim that he was intoxicated at the time of the crime due to the ingestion of alcohol and drugs. All of the witnesses that encountered Defendant at the time of the commission of these crimes testified he did not appear abnormal and his physical actions were normal in every respect. Simerly did not observe anything abnormal about Defendant and Zimmerman testified Defendant was able to direct Zimmerman where to drive and appeared to know the route to take. Officers Stephens, Taylor, Bates, and Sons, all testified that Defendant did not appear to be intoxicated and acted normal in every way from their observations of him. It was for the jury to determine the facts from this conflicting testimony and we will not reweigh these facts nor second guess the credibility of the witnesses. *Fordyce v. State*, (1981) Ind., 425 N.E.2d 108; *Loyd v. State*, (1980) 272 Ind. 404, 398 N.E.2d 1260. Sufficient probative evidence was presented to the jury to permit it to find Defendant was not intoxicated when he committed the crime and we will not disturb that judgment. *Fordyce, supra*.

## VII

Defendant claims the trial court erred in denying his pretrial motion for change of venue from the county, claiming that pretrial publicity prevented a fair trial of his cause in Henry County. A change of venue from the judge was granted but a change from the county was denied by the trial judge. We note first that Defendant's motion for change of venue from the county was not verified. Ind.R.Crim.P. 12 governing change of venue in criminal cases

requires the application for venue from the county to be verified. Defendant's failure to follow this rule alone justifies the denial of the motion for change of venue. *Petruso v. State*, (1982) Ind., 441 N.E.2d 446.

▇▇▇▇ In order to obtain a change of venue from the county, however, it was incumbent upon Defendant to produce evidence of community bias or prejudice sufficient to convince the trial judge that he could not obtain a fair trial in that county. *Dorton v. State*, (1981) Ind., 419 N.E.2d 1289. In order to do this, Defendant needed to demonstrate that the adverse publicity made the potential jurors unable to set aside their preconceived notions of guilt and to render a verdict based upon the evidence. *Sage v. State*, (1981) Ind., 419 N.E.2d 1286; *Pine v. State*, (1980) Ind., 408 N.E.2d 1271. Defendant makes no such claim, however, other than his general statement that there was adverse publicity and the testimony of two witnesses he called, one of them the father of defense counsel, who stated that the newspaper accounts convinced him Defendant was guilty and he heard other people say they were convinced of Defendant's guilt after reading the newspapers. Defendant does not indicate or demonstrate that any of the jurors had seen the articles, that they had formed any opinion or that they were unable to set that opinion aside. There is no transcript of the *voir dire* furnished so that we may determine those facts. Furthermore, Defendant does not claim nor show that he exhausted his peremptory challenges and still faced prejudice with potential jurors. Since he does not present a record which demonstrates any harm to his cause, he therefore presents no issue on which we can find error. *Grooms v. State*, (1978) 269 Ind. 212, 379 N.E.2d 458.

### VIII

With his motion to correct errors Defendant included affidavits from two witnesses, Teresa Groce and Edith Nichols, who stated therein they had heard a woman they determined to be the wife of one of the jurors state that her husband was upset with having to serve on the jury, that he wanted out and did not care how the case turned out, and would do anything to finish the case. The trial court denied the motion to correct errors and Defendant now argues on appeal that these affidavits show misconduct on the part of the jury and he was accordingly denied a fair trial. The State contends Defendant has failed to establish any jury misconduct since the affidavits are nothing more than hearsay.

▇▇▇▇ We agree these affidavits evidence nothing more than hearsay and do not establish jury misconduct. The affidavits do not identify anyone. They merely state that some unnamed person who represented herself to be the wife of a juror had stated her husband had made a statement that he was a juror and that he was upset with being a juror and would get out of it as soon as he could. The jury was sworn by the trial court and took an oath to well and truly try the matter in issue between the parties and a true verdict give, according to the law and the evidence. Ind.Code § 34–1–20–6. They were further instructed by the trial court as to how they were to try the case and as to how they were to consider the law and the evidence given to them. The jury is presumed to have followed this oath and these instructions unless there is evidence to the contrary showing they did not. The State's position is well taken that the affidavits present nothing more than mere uncorroborated speculation that jury misconduct may have occurred. The trial court properly denied the motion to correct errors on this issue.

### IX

▇▇▇▇ Defendant claims the trial court, through informal conversations, gave Defendant the impression that the court wanted the trial to be concluded quickly and not to last more than three or four days. The statement attributed to the trial court seems to be that it had indicated to counsel it hoped the cause could be tried in three or four days. The alleged statement by the trial court does not appear

anywhere on the record and we have only Defendant's word that it took place at all. There is also nothing in the record to indicate that Defendant objected to the alleged statement of the trial court or challenged it in any manner until he filed the motion to correct errors. Bare assertions of error not disclosed by the record are not available for review by this Court. *Hedges v. State,* (1982) Ind., 443 N.E.2d 62; *Brown v. State,* (1981) Ind., 417 N.E.2d 333. Furthermore, Defendant does not demonstrate that his defense had been prejudiced even if, in fact, the statement was made by the trial court. He does not show that he was not able to fully examine or cross-examine witnesses or that he was unable to call any particular witness or witnesses because of time limitations. He shows no prejudice other than to allege that the statement was made and that he was distressed by it. He presents no issue on which this Court could base a reversal. *Wells v. State,* (1982) Ind., 441 N.E.2d 458.

## X

 Defendant argues the trial court erred during the sentencing hearing when it permitted two police officers to testify as to their opinions on sentencing. The State contends that Defendant failed to raise any objection to the testimony of these two witnesses at the time their testimony was offered and further that the trial court properly heard this evidence along with all of the other evidence at the sentencing hearing. "In determining the appropriate sentence, the court may consider matters outside the presentence report." *Bish v. State,* (1981) Ind., 421 N.E.2d 608, 618. The trial court is to consider the facts and circumstances relevant to sentencing. *See Forrester v. State,* (1982) Ind., 440 N.E.2d 475; *Bish v. State, supra.* One of these officers, Officer Bates, testified that in investigating the present crimes he had conversations with the defendant in which the defendant showed no remorse for this crime and told him in the future when he gets involved in activities such as this, he'll probably just kill the witnesses so they can't testify against him. The other officer

testified he thought these sentences should be consecutive. This officer testified he was familiar with this case and the evidence presented at trial as well as the statement of intention of the defendant made to Officer Bates. The trial court did examine the presentence report and found as aggravating circumstances Defendant's long history of criminal activity, that he is in need of correctional supervision, and that imposition of a reduced sentence would depreciate the seriousness of these crimes. He further found that these particular crimes threatened serious harm to at least two individuals. The trial court properly used sentencing standards as the law provides. Ind.Code § 35–4.1–4–7. The sentences were within the statutory perimeters and are reasonable under the facts and circumstances of this case considering the crimes committed and the person committing them. We therefore find no error in the manner in which the trial judge sentenced this defendant.

Finding no error, we affirm the trial court.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.