Sharolyn ACKELMIRE on behalf of herself and all others similarly situated, Plaintiffs

v.

NORTH VERMILLION COMMUNITY SCHOOL CORPORATION OF VERMILLION COUNTY, IN and North Vermillion Board of School Trustees, being: Russell D. McLain, Kenneth L. Balding, Dennis G. Hughes, Larry A. Bemis, Glenda J. Boling, Marvin Crowder, John Dunham and State Board of Tax Commissioners being: Jack L. New, Chairman, C. Curt Zorm, member, Gordon E. McIntyre, member, Defendants.

No. 83T05–8909–TA–00040.

Tax Court of Indiana.

Aug. 3, 1990.

Malcolm H. Aukerman, Newport, for plaintiffs.

Linley E. Pearson, Atty. Gen. by Ted J. Holaday, Deputy Atty. Gen., Indianapolis, Bruce V. Stengel, Clinton, for defendants.

FISHER, Judge.

This matter comes before the Court on the following motions: Sharolyn Ackelmire's (Ackelmire) motion for judgment on the pleadings, petition for certification of class and for notice to the class; and, the North Vermillion Board of School Trustees' (School Board) and the Indiana State Board of Tax Commissioners' (State Board) joint petition to declare action a public lawsuit and for plaintiff's [sic] to post bond.

*Facts*

The North Vermillion Community School Board held an executive session and meeting on February 20, 1989. Either at this meeting or sometime prior to it members of the School Board and Superintendent Renz decided to send letters to a few people in the community in order to obtain their views on building a new school. Notice of this decision was not given to the public. The meeting, held on February 27, and not preceded with public notice, was attended by school board members, school administrators and those who received a letter of invitation. At the next meeting, held on March 13, 1989, the School Board voted to accept a recommendation given by Indiana State University calling for a consolidation of the three elementary schools in the district. The agenda posted prior to the March meeting stated that there would be a "General overview" of the study and the Board would "officially adopt their recommendations." The relevant minutes of the meeting provided:

The board and audience were then made aware of the Indiana State Educational and Facility Study and its recommendation by the superintendent. Following the brief presentation *three motions were made:* 1) [members] *moved* and ... seconded to accept the study ... [and members] *moved* and ... seconded to adopt the recommendations as presented. [Both motions passed]. [Members] *moved* and ... seconded [to] go on record to raise the Capital Projects Fund to $1.00 for 3 years to accrue money for the purpose of construction of a new elementary school on the site of land presently owned by the corporation north of the high school. The motion passed, 6–0. Supt. Renz made the board aware that the Capital Projects Fund would now be advertised and presented for official adoption at its April 10 regular meeting. The board also will use *March 27*, at *7:00* in the high school auditorium for a time to explain the Capital Projects and to answer questions about the recommendations to the public.

Plaintiffs' Exhibit 19.

Notice of the April 10 meeting was published on March 29, in two local newspapers, the Daily Clintonian and the Herald News. Only 12 of the 323 people who owned property in Vermillion County but lived outside the county received either of these papers. The School Board made no inquiry into the newspapers' circulation. The notice appears in Appendix A.

At the April 10 meeting the School Board voted to establish a "Capital Projects Fund" and adopted a plan pursuant to IC 21–2–15. The School Board submitted the March 29 notice to the Indiana State Board of Tax Commissioners for approval. The State Board approved the notice and published one notice of the School Board's establishment of the Capital Projects Fund in the same two newspapers on May 24. The notice set forth a general outline of the plan and directed taxpayers to file objections to the plan within ten days. Remonstrators filed objections with the Vermillion County auditor on June 2, 1989. Sharolyn Ackelmire did not sign the remonstrance petition.

The remonstrance hearing was held on June 29, 1989. Sharolyn Ackelmire knew

about the hearing by June 25, 1989, but chose not to attend. The remonstrators objected to the Capital Projects Fund on the grounds that the notice given was unreasonable and insufficient. The language used in the remonstrance petition can be found in Appendix B. After the hearing, and upon the Property Tax Control Board's recommendation, the State Board approved the Capital Projects Fund on August 24, 1989.

Ackelmire, who owns property in Vermillion County but lives 84 miles outside the county, contends that the notice was not sufficient and that the School Board knew the names of the county property owners and should have sent personal notices of the April meeting to those property owners who resided outside the county. Their names were easily ascertainable by examining tax and school records.

The School Board contends that only one notice of publication was necessary and it did not have a duty to notify any taxpayers by mail.

### Discussion and Decision

The following issues are before the Court:

#### I.

A. Whether the action is a public lawsuit?

B. If so, must the Plaintiffs post bond?

#### II.

A. Whether there are any genuine issues of material fact of whether the Plaintiffs' due process rights under the Indiana and United States Constitutions have been violated?

i. Did the School Board follow the statute prescribing notice?

ii. Did the content of the notice adequately inform taxpayers of the purpose for the meeting?

iii. Does due process require more notice than the statute provides?

This Court's review is limited to determining whether the State Board's Order is supported by substantial evidence, is an abuse of discretion, is in excess of statutory authority, or is arbitrary or capricious. *Bailey Seed Farms, Inc. v. State Bd. of Tax Comm'rs* (1989), Ind. Tax, 542 N.E.2d 1389, 1391.

#### I.

### A. PUBLIC LAWSUIT

The School Board and the State Board filed a joint motion to declare the action a public lawsuit, contending that this is a public lawsuit pursuant to IC 34-4-17-1, *et seq.*, because Ackelmire challenges the construction of the school. Ackelmire contends the challenge goes only to notice, and, as class representative, she can not adequately represent those taxpayers who own property in the county and also reside in the county.

IC 34-4-17-1(b) provides in pertinent part:

'Public lawsuit' shall mean any action whereby the validity, location, wisdom, feasibility, extent or character of construction, financing or leasing of any public improvement by any municipal corporation is questioned *directly or indirectly, including but not limited to* suits for declaratory judgments or injunctions to declare invalid or to enjoin such construction, financing or leasing, and shall mean any action to declare invalid or enjoin the creation, organization or formation of any municipal corporation.

(Emphasis added.)

In the original petition filed with the Vermillion Circuit Court (Plaintiffs' Exhibit 1), and transferred to the Tax Court, Ackelmire requested that the school corporation and the board of trustees be restrained from "[c]onducting any negotiations or making any plans to employ any architects, engineers, surveyors or any persons of any description for the purpose of constructing ... the consolidated elementary grade school." This pleading fits "directly or indirectly" into IC 34-4-17-1(b)'s language "to declare invalid or to enjoin such construction, financing or leasing."

Furthermore, "the public lawsuit statute does contemplate attacks on procedural mechanisms of municipal boards as they make decisions on public improvements." *Huber v. Franklin County School Bd.* (1987), Ind., 507 N.E.2d 233, 237. In a footnote, the court in *Huber* stated:

> The Court of Appeals is correct that an action brought strictly under the Open Door Law is designed to address only the procedure by which public officials make decisions of importance to the community and not the correctness of those decisions on the merits. .... [However] [f]or a few isolated plaintiffs, a claim under the Open Door Law may simply be another vehicle for gaining publicity for their opposition to a municipal improvement and for causing further delay of the embattled project. In this case, the Franklin County Taxpayers Association filed the suit only after the board admitted its mistake and arranged to correct it. Instead of dismissing its suit, the Association continued its efforts to enjoin the board from further action on the construction management contract, which was integral to the project. The trial court, of course, found that the Association's claim, despite its Open Door Law foundation, *did* question the merits of the project; hence, its determination that the Association's complaint was a public lawsuit.

*Id.* at 237 n. 4.

Ackelmire was informed of the June 29 remonstrance hearing on June 25, yet chose not to attend. She also chose not to file an affidavit, contact the School Board, or take any other action other than filing a lawsuit. Ackelmire's attorney, who at that time was not representing her, attended the hearing.

Another "controlling factor in deciding whether a particular lawsuit is a public lawsuit is whether the plaintiff seeks to protect a public interest...." *Pepinsky v. Monroe County Council* (1984), Ind., 461 N.E.2d 128, 132–33. The petitioners in *Pepinsky* brought the action based solely on behalf of themselves, not on behalf of fellow citizens. *Id.* at 134. The court held:

> This is not an action where the appellant's complaint seeks remedies regarding their personal or property rights. The action goes to the heart of the question concerning whether or not in the public interest the County Council should proceed with this project. The action was brought attacking the alleged failure of the public body to comply with the open door law. This is the type of action contemplated by the public lawsuit statutes. This cause could have as well been brought on a myriad of statutes attacking the procedures or compliances with these statutes and laws such as, but not limited to, manner in which meetings were conducted, procedure in letting and accepting bids....

*Id.* at 134–35.

Ackelmire has repeatedly asserted "[t]hat *all* of the names and addresses of *Taxpayers* having property located within the North Vermillion School District are on file and available to the general public in the office of the Vermillion Treasurer." (Motion For Judgment on the Pleadings, p. 4) (emphasis added). Furthermore, if there was a violation of the notice provision in IC 21-2-15-5, or the Open Door Law[1], the county residents as well as the out-of-county residents will reap the benefits of this suit. In fact, almost all of the remonstrators reside in Perrysville, which is located within Vermillion County. The Court's determination will have an effect not only on Ackelmire's property, but on all of the property located within the school district. The Court therefore finds that this action is a public lawsuit. The Defendants' motion to declare the action a public lawsuit is granted.

Pursuant to IC 34-4-17-8(b), Ackelmire has standing to file the suit, even though she did not sign the remonstrance petition or attend the remonstrance hearing. At least one plaintiff in the class has exhausted their administrative remedies by filing the remonstrance petition and raising the

---

1. IC 5-14-1.5-1, *et seq.*

issue of insufficient notice. *See* Appendix B.

The Plaintiffs also filed a motion to declare the lawsuit a class action with notice sent to class members. Since the Court determined that this is a public lawsuit, the action will be dealt with as such. The Plaintiffs' motion to declare the lawsuit a class action is denied.

### B. BOND

■ The School Board and the State Board have requested that the Court order the Plaintiffs to post a bond. IC 34–4–17–5 provides in pertinent part:

At any time prior to the final hearing in a public lawsuit, the defendant may petition for an order of the court that the cause be dismissed unless the plaintiff shall post a bond with surety to be approved by the court payable to defendant for the payment of all damages and costs that may accrue by reason of the filing of the lawsuit in the event the defendant prevails. A hearing shall be had on such petition in the same manner as the hearing on temporary injunctions under IC 34–1. If at the hearing the court determines that the plaintiff cannot establish facts which would entitle him to a temporary injunction, the court shall set the amount of bond to be filed by the plaintiff in an amount found by the judge to cover all damage and costs which may accrue to the defendants by reason of the pendency of the public lawsuit in the event the defendant prevails.

A plaintiff requesting a temporary injunction generally must prove the following basic elements:

(1) that the [Plaintiffs] will suffer irreparable harm if relief is not granted;

(2) that the harm to the [Plaintiffs] if relief is denied outweighs the harm to the respondent if relief is granted;

(3) that the public interest will not be harmed if relief is granted; and

(4) that [Plaintiffs] will post sufficient security to cover costs and damages which the respondent may suffer if it is wrongfully enjoined.

*National Private Trucking Ass'n v. Indiana Dep't of State Revenue* (1987), Ind.Tax, 512 N.E.2d 928, 930–31 (citing *Wells v. Auberry* (1982), Ind.App., 429 N.E.2d 679).

However,

where the plaintiff is not actually seeking a temporary injunction, some of these requirements do not make sense and are not applicable. In fact, the only applicable requirement is the first one. The purpose of this statutory scheme is to protect the public against a 'flood of harassing litigation' which obstructs and delays public improvement at prohibitive costs and from the 'financial damage of completely non-meritorious litigation'. The requirement that the plaintiff must introduce evidence sufficient to show the trial court that there is a substantial question to be tried accomplishes those purposes adequately by eliminating merely harassing suits or completely non-meritorious litigation.

*Johnson v. Tipton Community School Corp.* (1970), 253 Ind. 460, 464, 255 N.E.2d 92, 94 (citation omitted) (The elements that the Court considered were 1) "the question to be tried was a substantial one, proper for investigation by a court of equity;" 2) "the status quo should be maintained until the final hearing or appellants will certainly be injured irreparably before a trial on the merits can be had;" and 3) "there is no adequate remedy at law.")

The Plaintiffs will allegedly suffer irreparable harm if the School Board is allowed to proceed with the Capital Projects Fund plan because the plan was adopted in violation of IC 21–2–15–5. The substantial question would be the notice required by IC 21–2–15–5(c). Although other violations [2]

---

**2.** The Plaintiffs allege that the February 27 meeting was held in violation of the Indiana Open Door Law, that due process under the United States and Indiana Constitutions required notice be sent to people living outside Vermillion County who owned property in the county, and, that the content of the April 10

have been alleged, the Court need only examine whether the Plaintiffs can reasonably prove the School Board failed to publish the notice required in IC 21–2–15–5(c). "It is not necessary that such a case should be made out as would entitle appellants to relief on the final hearing." *Johnson*, 253 Ind. at 464, 255 N.E.2d at 94.

IC 21–2–15–5(c) provides:

If a hearing is scheduled under subsection (a), the governing body shall publish the proposed plan and a notice of the hearing in accordance with IC 5–3–1–2(b).

IC 5–3–1–2(b) provides:

If the event is a public hearing or meeting concerning any matter not specifically mentioned in subsection (c), (d), (e), (f), or (g), notice shall be published one (1) time, at least ten (10) days before the date of the hearing or meeting.

IC 5–3–1–2(f) provides:

If the event is the establishment of a cumulative or sinking fund, notice of the proposal and of the public hearing that is required to be held by the political subdivision shall be published two (2) times, at least one (1) week apart, with the second publication made at least three (3) days before the date of the hearing.

If the Capital Projects Fund is a cumulative fund, two notices of the April 10 meeting should have been published. The Court finds that the Capital Projects Fund adopted by the School Board on April 10 is a cumulative fund which required publication of notice two times. The fund is spread over three years and the sources from which the fund is derived are added together, or accumulated, to form one Capital Projects Fund.[3]

If the School Board is permitted to proceed with the plan, even though the requisite statutory notice was not given before its adoption, the Plaintiffs can show irreparable harm. However, if the Court were determining whether the Plaintiffs would be entitled to a temporary injunction by invoking its equity jurisdiction, the Court would not only consider the equity favoring the Plaintiffs, but also whether the public would be harmed by a temporary injunction.

"[W]here an injunction is asked which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." *Wells*, 429 N.E.2d at 683 (quoting *Virginia Ry. Co. v. United States* (1926), 272 U.S. 658, 672–73, 47 S.Ct. 222, 228, 71 L.Ed. 463).

The State Board found, "The Cayuga and Newport Elementary School buildings are outdated. All three elementary schools need repairs [and] [t]he remodeling cost for the three existing elementary school buildings is estimated to be approximately $7,800,000, plus any financing cost." Board's Order at 2.

The School Board asserts that if the school is not built, the children will be required to attend a school plagued by heating problems, small classrooms, lack of space for computers, and the inability to meet the needs of its special students. The testimony from several teachers clearly established these facts. However, even if the Court were to grant a temporary injunction, the school could still be built, eventually, even though the funds accumulated in the Capital Projects Fund could not be used at this time. Also, the funds from a new Capital Projects Fund could not be used if the School Board chooses to adopt another Capital Projects Fund. The harm to the public therefore comes not from the inability to build a school, but from the inability to access the funds in the Capital Projects Fund and from the delay caused if a new Capital Projects Fund must be adopted.

The harm that would accrue to members of the public, who are also Plaintiffs in this suit, is an increase in the cost of the school. Lonnie Therber, of Therber & Wilkerson & Associates, a company that assists munici-

---

notice did not inform the public of the action that would be taken by the School Board.

**3.** For a more thorough analysis of IC 21–2–15–5(c), *see* the Court's analysis under Part *II.* B.(i).

pal governments in financing capital projects, testified that a Capital Projects Fund would reduce the bond issue of a new school because fewer bonds would need to be sold, decreasing the underwriter's discount and the interest. For every $1.00 taken out of a bond issue, the total outlay is reduced by $1.13. He further testified that for every $100,000 contributed from a Capital Projects Fund, the tax rate for the bond issue is reduced by 2.3 cents. In addition, for all the money contributed from a school's own Capital Projects Fund, the school can obtain a common school fund loan with a five percent interest rate. The loan amount can equal two percent of the district's total assessed valuation. (R. 295–98). The end result is that the cost of building the school will be decreased if funds are available from the Capital Projects Fund. If the funds are not available, the public is harmed through the increased costs.

Furthermore, Larry Phelps, Vice President and Chief Operating Officer of Odle, McGuire & Shook Corporation, a firm specializing in the architectural planning of schools, testified that if the current building project is delayed for one year, the increased costs of the project will rise at least $447,500. In addition, any delay up to five months could possibly be, in effect, a delay of one year, because

> [y]ou wouldn't be able to open bids until May. Due to financing it would be late summer or early fall before you could start construction. With that situation, you would not be able to, unless it was a very mild winter, get the building enclosed for winter, and you would either get into temporary enclosure or you would lose a year.

(R. 283–85).

Conversely, those members of the public, who are also Plaintiffs in this suit, that do not want a new, consolidated school, and did not see the March 29 notice, also will be harmed if the School Board is permitted to proceed with a plan that was adopted without following the notice procedures.

If the Court were to grant a preliminary injunction, the most vulnerable part of the public who have had no voice in these proceedings, the children of Vermillion County, would suffer the most harm. As Luke White, Bank President, lawyer, and ex-school board member, testified:

> [W]hen you get to the place where you need to build a new building, ... you might as well go ahead and do it, that nobody is smart enough to guess whether the market will be better now or six months from now. And you may be able to run you private business on the basis that, I won't build a new barn until next year because the costs will be lower, but you can't quite educate the children on that basis. When the kids need to be educated, they have this window of time and you've got to do it now.

(R. 178).

The Court finds that the Plaintiffs have not sufficiently shown that the public would not be harmed if the Court were to grant a preliminary injunction. The Plaintiffs have therefore not shown that they would be entitled to a temporary injunction and must post bond in an amount to "cover all damage and costs which may accrue to the defendants by reason of the pendency of the public lawsuit in the event the defendant prevails." IC 34–4–17–5. The amount that represents the damages that may accrue during a five to twelve month construction delay of a school building with a projected cost of $8,950,000, and an inflation rate of five to seven percent, is the sum of $626,000. However, the Court's ruling on the Plaintiffs' motion for judgment on the pleadings renders any order to post bond moot because the merits of the case will be determined on the Plaintiffs' motion for judgment on the pleadings. *See* IC 34–4–17–5; *Riggin v. Board of Trustees of Ball State Univ.* (1986), Ind.App., 489 N.E.2d 616, 630, *transfer denied,* (1986), Ind., 499 N.E.2d 243; *Carson v. City of Indianapolis* (1982), Ind., 430 N.E.2d 788, 791.

## II.

### A. JUDGMENT ON THE PLEADINGS

Ackelmire filed a motion for judgment on the pleadings pursuant to Trial Rule 12(C).

Since matters outside the pleadings have been submitted, the Court treats the motion as one for summary judgment. Trial Rule 56(C) provides that judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, admissions and affidavits, ... together with any testimony show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The School Board admits that only one notice was published prior to the April 10 meeting and that no individual notices were sent to any property owners, living in the county or out of the county, even though the School Board knew, or could have ascertained, their names and addresses from the property or school records.

The School Board asserts that an issue of fact remains as to whether the remonstrators raised the statutory notice issue in the remonstrance petition or at the remonstrance hearing. The remonstrators' petition asserts that the "[t]axpayers were not reasonably and sufficiently notified by [the] school corporation of any hearings or discussions to be held on [the] Capital Project's Funds for building programs." (Appendix B). Furthermore, the State Board expressly ruled on the notice required by IC 21–2–15–5 and IC 5–3–1–2(b) in its August 24 Order. Hence, the Court finds that there is no genuine issue of material fact as to whether the remonstrators raised the issue of the notice required by IC 21–2–15–5(c).

Because no genuine issue of material fact remains, the Court will determine whether the State Board's determination that the School Board followed the proper procedure when adopting the Capital Projects Fund is in excess of statutory authority, an abuse of discretion or is arbitrary or capricious.

### i. Statutory Notice

▮ The Court must determine whether the School Board provided the notice required under IC 21–2–15–5 for the establishment of a Capital Projects Fund. The State Board found, in relevant part:

5. The establishment of a Cumulative Building Fund is provided for in I.C. 21–2–6. Although the State Board of Tax Commissioners may not approve the establishment of a Cumulative Building Fund after January 15, 1987, the appropriate statute for publication of public notice was I.C. 5–3–1–2(f).

6. The Capital Projects Fund is not a Cumulative Building Fund. The appropriate statute for publication of public notice is IC 5–3–1–2(b), which requires one publication in two newspapers.

. . . .

2. The Capital Projects Fund Plan adopted by the North Vermillion Community School Corporation is approved with current expenditures in the amount of $218,800 and an Allocation for Future Projects up to $1,403,200; and,

. . . .

4. The Motion to dismiss the Capital Projects Fund Plan adopted on April 10, 1989 is denied.

Order of State Board, August 24, 1989.

Ackelmire contends that the State Board's determination is erroneous because the Capital Projects Fund was spread over three years and it was therefore a cumulative fund, requiring two publications, one week apart. IC 5–3–1–2(f). The State Board and the School Board contend that the fund is a Capital Projects Fund, not a cumulative or sinking fund; that the legislature's use of the words "a notice" indicates only one notice is required, and if the legislature had intended more than one notice to be published, it would have referred directly to IC 5–3–1–2(f).

IC 21–2–15–4 provides in part:

(a) A school corporation may establish a capital projects fund.

(b) With respect to any facility used or to be used by the school corporation ..., the fund may be used to pay for the following:

(1) Planned construction, repair, replacement, or remodeling.

IC 21–2–15–5(b) provides:

The state board of tax commissioners shall prescribe the format of the plan. A

plan must apply to at least the three (3) years immediately following the year the plan is adopted. A plan must estimate for each year to which it applies the nature and amount of proposed expenditures from the capital projects fund. A plan must estimate:

(1) the source of all revenue to be dedicated to the proposed expenditures in the upcoming budget year; and

(2) the amount of property taxes to be collected in that year and retained in the fund for expenditures proposed for a later year.

(c) If a hearing is scheduled under subsection (a), the governing body shall publish the proposed plan and a notice of the hearing in accordance with IC 5–3–1–2(b).

IC 5–3–1–2(b) provides:

If the event is a public hearing or meeting concerning any matter not specifically mentioned in subsection (c), (d), (e), (f), or (g), notice shall be published one (1) time, at least ten (10) days before the date of the hearing or meeting.

IC 5–3–1–2(f) provides:

If the event is the establishment of a cumulative or sinking fund, notice of the proposal and of the public hearing that is required to be held by the political subdivision shall be published two (2) times, at least one (1) week apart, with the second publication made at least three (3) days before the date of the hearing.

The State Board interpreted IC 21–2–15–5 in 50 I.A.C. 9–1–4, which provides:

Before a school corporation may establish a capital projects fund, or may continue to levy taxes for an established fund, the governing body must pass a resolution to adopt a plan. If the governing body schedules a hearing on the plan, it must publish a notice one (1) time in accordance with IC 5–3–1–2(b) that indicates for each year of the plan the total amount of proposed expenditures in each of the following categories....

The issue is whether the reference to IC 5–3–1–2(b) in IC 21–2–15–5(c) is a reference to all of the provisions or only to one publication provision in IC 5–3–1–2. The Court must apply the rules of statutory interpretation to ascertain the Legislature's intent when it referred to IC 5–3–1–2(b) in IC 21–2–15–5(c). The "foremost objective of the rules of statutory construction is to determine and effect the true intent of the legislature." *Park 100 Dev. Co. v. Indiana Dep't of State Revenue* (1981), Ind., 429 N.E.2d 220, 222 (citing *Loza v. State* (1975), 263 Ind. 124, 325 N.E.2d 173).

IC 5–3–1–2(b) provides that only one publication is needed when the event advertised is a public meeting not covered by other subsections. Subsection (f) provides the number of advertisements required if the event is the establishment of a cumulative or sinking fund. IC 5–3–1–2(f) is a general notice provision that refers not to the defunct Cumulative Building Fund, but to any cumulative or sinking fund. *See* IC 21–2–6–4.

In the case at bar, the Capital Projects Fund is cumulative in nature. The Plan adopted by the School Board is spread over a three year period. "Cumulative" means

heaping up; increasing; forming an aggregate. The word signifies that two things are to be added together, instead of one being a repetition or in substitution of the other.

*Black's Law Dictionary* 343 (5th ed. 1979).

"Barring an expressed differing legislative intent, words in statutes are given their plain, ordinary, usual meaning." *Indiana Dep't of State Revenue v. Cable Brazil, Inc.* (1978), 177 Ind.App. 450, 460, 380 N.E.2d 555, 561.

The present Capital Projects Fund is a fund where money from different sources is added together, and, where money from different years is added together; hence, the fund is a cumulative fund. If instead, each year were distinct and separate, and money collected each year were not added to previous collections under the plan, the fund would possibly be a noncumulative fund.

The March 29 notice shows that the plan is funded with a cumulative fund. The notice uses the words "cumulative totals."

Under the "SOURCES AND ESTIMATES OF REVENUE" section of the plan, the plan shows that the following items will be added together to establish the total funds available for the plan: the cash balance, the property taxes, the auto excise and bank tax receipts, and other revenue. (Plaintiffs' Exhibit 14.) Furthermore, the minutes of the March 13 meeting describe the School Board's action as "accruing money." (Plaintiffs' Exhibit 19). Since this Capital Projects Fund is a cumulative fund, the notice provisions provided in IC 5–3–1–2(f) apply, and two notices of publication were required.

The Defendants contend that the Legislature's use of the words "a notice," instead of "notices," and the Legislature's direct reference to IC 5–3–1–2(b) instead of IC 5–3–1–2(f), both indicate only one notice was required pursuant to IC 5–3–1–2(b). This interpretation places form over substance. *Indiana Dep't of Revenue v. Meadowood I.U. Retirement Community, Inc.* (1981), Ind.App., 428 N.E.2d 791, 793.

First, "a notice" can be published two times. Second, IC 5–3–1–2(b) requires that notice be published according ω (c), (d), (e), (f), or (g), if any of these sections apply to the particular fact pattern. There was no need for the Legislature to refer directly to (f) because (b) already does this. Perhaps the Legislature's objective was to allow flexibility as to the particular Capital Projects Fund being considered. In the case at bar, at least, the Capital Projects Fund is a cumulative fund and (f) specifically mentions cumulative or sinking funds.[4]

The State Board's approval of the School Board's plan was an abuse of discretion because the plan was not adopted in compliance with the notice provisions provided in IC 21–2–15–5(c). The Court GRANTS Ackelmire's motion for judgment on the pleadings on the issue pertaining only to the statutory notice requirements of IC 21–2–15–5(c). Because of the Court's ruling, it is not necessary to address Ackelmire's contentions concerning the mailing of individual notice or the content of the notice published.[5]

For the reasons stated in Section "I.B." herein, the Court recognizes the effect this decision may have on the educational process in the North Vermillion School Corporation. However, the procedure provided by the Legislature to establish a Capital Projects Fund is for everyone's protection and must be followed.

The State Board's determination that the School Board complied with the statutory notice provisions is reversed. This cause is remanded to the State Board of Tax Commissioners for further action in accordance with this opinion.

APPENDIX A

Notice is hereby given to the taxpayers of The North Vermillion Community School Corporation of Vermillion County, Indiana, that the North Vermillion Board of School Trustees will meet at the Superintendent's Office on April 10, 1989 at 7:30 p.m. for the purpose of considering a proposal to establish a Capital Projects Fund and a proposed plan under I.C. 21–2–15. The following is a general outline of the proposed plan:

| CURRENT EXPENDITURES: | 1990 | 1991 | 1992 |
|---|---|---|---|
| (1) Planned construction, repair, replacement, or remodeling | 57,000 | 35,000 | 32,500 |

4. IC 6–1.1–18–5 also provides that notice shall be given in accordance with IC 5–3–1–2(b). However, in IC 6–1.1–18–5, the Legislature included the following words, "The notice shall be given *once* in accordance with IC 5–3–1–2(b)." (Emphasis added.)

5. The Court's reversal is based only upon the School Board's failure to give notice in accordance with IC 21–2–15–5(c). The United States and Indiana Constitutions do not require the School Board to send individual notice by mail of the meeting at which the Capital Projects Fund was adopted. *See Slebodnik v. City of Indianapolis* (1980), Ind.App., 412 N.E.2d 854; *Fritz v. Board of Trustees of Clermont* (1969), 253 Ind. 202, 252 N.E.2d 567; *Yarger v. Raver* (1957), 237 Ind. 88, 143 N.E.2d 662; and *Wright v. House* (1919), 188 Ind. 247, 121 N.E. 433.

| CURRENT EXPENDITURES: | 1990 | 1991 | 1992 |
|---|---|---|---|
| (2) Site acquisition | 0 | 0 | 0 |
| (3) Site development | 3,000 | 1,000 | 0 |
| (4) Emergency allocation | 108,000 | 68,000 | 68,000 |
| (5) Purchase, lease, and repair of equipment | 25,800 | 22,800 | 20,000 |
| (6) Purchase, lease, maintenance, & repair of computer hardware | 25,000 | 17,500 | 17,500 |
| SUBTOTAL CURRENT EXPENDITURES | 218,800 | 144,300 | 138,000 |
| (7) Allocation for future projects (cumulative totals) | 1,349,250 | 1,785,250 | 2,221,250 |
| (8) Interest transfer to General Fund, pursuant to P.L. 85–1987 Sec. 5 | 0 | 0 | 0 |
| TOTAL EXPENDITURES AND ALLOCATIONS (cumulative totals) | 1,567,250 | 1,929,550 | 2,359,250 |

SOURCES AND ESTIMATES OF REVENUE:

| | |
|---|---|
| January 1, 1990 Cash Balance | 1,201,000 |
| Less encumbered appropriations | 70,000 |
| Estimated cash available to fund plan | 1,131,000 |
| Property taxes | 381,250 |
| Auto Excise and Bank Tax receipts | 5,000 |
| Other Revenue | 50,000 |
| TOTAL FUNDS AVAILABLE FOR PLAN | 1,567,250 |

Taxpayers are invited to attend the meeting for a more detailed explanation of the plan and to exercise their rights to be heard on the proposal. If the proposal is adopted by resolution it will be submitted to the State Board of Tax Commissioners for approval.

Russell D. McLain, President
Kenneth L. Balding, Vice President
Dennis G. Hughes, Secretary
Larry A. Bemis, Member
Glenda J. Boling, Member
Marvin Crowder, Member
John Dunham, Member

March 29, 1989 Notice

APPENDIX B

1. The notice to taxpayers was based on the wrong sources and are inaccurate; that the estimates of revenue used inaccurate assessed valuations.

2. Taxpayers were not reasonably and sufficiently notified by school corporation of any hearings or discussions to be held on Capital Project's Funds for building programs; that Taxpayers have not been notified of their 1989 assessed valuation on a Form F–11. that [sic] Taxpayers will have no remedy to object to any advertised plan after being notified on increased assessment.

3 [sic] No local input has been used in planning of Capital Projects Funds and/or nor adequate opportunity given to taxpayers to present their views; that no local polls have been taken.

4. The School administration does not know the outcome of financial burden of existing litigation now pending; that the North Vermillion School Corp. has an enormous debt on existing building projects in excess of *Six Million ($6,000,-000) dollars* which must be paid by the local taxpayers; that the additional proposed building plan could so impoverish the school corporation that it could not

offer an adequated [sic] educational program.

5. The study made by I.S.U. to show school population projected growth in future school enrollment in North Vermillion School District is inconclusive to warrant new building projects.

6. That the proposed plan constitutes an 'inverse condemnation' of residental [sic] property located near existing grade school facilities which residental [sic] locations were selected by parents by reason of the nearness; that the proposed Capital Project's Fund plan to remove grade school facilities from Newport, Cayuga, and Perrysville communities will substantially reduce existing property values therein and therefore violates the 'due process' clause of the State Constitution and Fourteenth Amendment of the U.S. Constitution.

8. [sic] The undersigned further object to said plan because it calls for an excessive expenditure of money which will require an excessive and burdensome tax rate.

Petition and Objections to Proposed Capital Program [sic] Fund Proposed by North Vermillion School Corporation.